IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

**ELIZABETH D. JOHNSON,**

       Plaintiff,

v.

**MICHAEL J. ASTRUE,**
Commissioner of Social
Security,

       Defendant.

**No. 12-CV-4052-DEO**

**ORDER**

_____

**I.   INTRODUCTION**

This matter is before the Court pursuant to Elizabeth Johnson's (hereinafter Ms. Johnson's) Complaint, requesting disability benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401 *et seq.*   This Court has authority to review the final decision of the Commissioner of Social Security (Commissioner) pursuant to 42 U.S.C. § 405(g). The parties appeared by phone for hearing on December 18, 2012.   After hearing, the Court took the matter under advisement and now enters the following.

## II.   FACTUAL BACKGROUND

At the time of the hearing, Ms. Johnson was a 25 year old woman residing in Spencer, Iowa.  At that time, she was single but lived with her boyfriend.  She has an 11th grade education and completed a 72 hour program to become a certified nurse assistant.  She has a limited employment history, working as a nursing assistant and in various retail settings.  It is undisputed in the record that Ms. Johnson has several severe mental disorders, including anxiety disorder and bipolar disorder.

## III.   PROCEDURAL HISTORY

On April 28, 2010, Ms. Johnson filed an application for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401 et seq.  Docket #7, p. 56, 58, 138-41.  Ms. Johnson also filed an application for supplemental security income benefits ("SSI") based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381 et seq. Tr. 57, 59, 142-45.  The claims were denied initially (Tr. 78-80), and on reconsideration (Tr. 86-94).  On December 23, 2011, following a hearing, an administrative law judge ("ALJ") found plaintiff was not under a disability as defined

in the Act (Tr. 8-24).  The Appeals Council declined review, making the ALJ's decision the final decision of the Commissioner (Tr. 1-5).  Ms. Johnson then filed the present complaint.

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and entitled to benefits.  20 C.F.R. § 404.1520.  The five successive steps are:  (1) determination of whether a plaintiff is engaged in "substantial gainful activity," (2) determination of whether a plaintiff has a "severe medically determinable physical or medical impairment" that lasts for at least 12 months, (3) determination of whether a plaintiff's impairment or combination of impairments meets or medically equals the criteria of a listed impairment, (4) determination of whether a plaintiff's Residual Functional Capacity (RFC) indicates an incapacity to perform the requirements of his past relevant work, and (5) determination of whether, given a Plaintiff's RFC, age, education and work experience, a plaintiff can "make an adjustment to other work."  20 C.F.R. § 404.1520(4)(I-v).

At step one, if a plaintiff is engaged in "substantial gainful activity" within the claimed period of disability, there is no disability during that time.   20 C.F.R. § 404.1520(a)(4)(I).  At step 2, if a plaintiff does not have a "severe medically determinable physical or mental impairment" that lasts at least 12 months, there is no disability.   20 C.F.R. § 404.1520(a)(4)(ii).   At step 3, if a plaintiff's impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, and last at least 12 months, a plaintiff is deemed disabled.  20 C.F.R. § 404.1520(e).  Before proceeding to step 4 and 5, the ALJ must determine a plaintiff's Residual Functional Capacity [RFC].   RFC is the "most" a person "can still do" despite their limitations.    20 C.F.R. § 404.1545(a)(1).  The RFC an ALJ assigns a plaintiff has been referred to as the "most important issue in a disability case . . . ." Malloy v. Astrue, 604 F. Supp. 2d 1247, 1250 (S.D. Iowa 2009) (citing McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir. 1982)(en banc)).  When determining RFC, the ALJ must consider all of the relevant evidence and all of the Plaintiff's impairments, even those which are not deemed

4

severe, as well as limitations which result from symptoms, such as pain.  20 C.F.R. § 404.1545(a)(2) and (3).  An ALJ "may not simply draw his own inferences about a plaintiff's functional ability from medical reports."  Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004).

At step 4, if, given a plaintiff's RFC, a plaintiff can still perform their past relevant work, there is no disability.  20 C.F.R. § 404.1520(a)(4)(iv).  At step 5, if, given a plaintiff's RFC, age, education, and work experience, plaintiff can make an adjustment to other work, there is no disability.   20  C.F.R.  §§  404.1520(a)(4)(v)  and 416.920(a)(4)(v).  This step requires the ALJ to provide "evidence" that a plaintiff could perform "other work [that] exists in significant numbers in the national economy."  20 C.F.R. § 404.1560(c)(2).  In other words, at step 5, the burden of proof shifts from a plaintiff to the Commissioner of the S.S.A..  Basinger v. Heckler, 725 F.2d 1166, 1168 (8th Cir. 1984).  The ALJ generally calls a Vocational Expert (VE) to aid in determining whether this burden can be met.

In this case, the ALJ applied the appropriate methodology and determined that:

5

The Claimant meets the insured status requirements ... [and] has not engaged in substantial gainful activity since February 25, 2012...The claimant has the following severe impairments: bipolar disorder; depression; panic disorder (without agoraphobia); generalized anxiety disorder; post-traumatic stress disorder; attention deficit hyperactivity disorder (combative type); borderline personality disorder; obesity; and chronic low back pain...

Tr. 13.

The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments ... The claimant testified ... her weight is approximately 250 pounds. The claimant's corresponding body mass index is 45.7, is Level III obesity... but there is no indication that the claimant's obesity, alone or in combination with any other impairment, given rise to a condition of listing-level severity. The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.02, 12.04, 12.06, and 12.08. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied...the undersigned cannot find the claimant's mental impairments cause more than mild restriction in activities of daily living...the undersigned finds that the claimant's mental impairments cause mild restriction in social functioning, there is no medical evidence these symptoms rise to even a "moderate" level of limitations...While the undersigned finds moderate restriction in concentration,

persistence or pace, there is no medical
evidence these symptoms rise to a "marked"
level of limitations, nor did the
claimant's testimony support such a
finding...As for episodes of
decompensation, the claimant has
experienced no episodes of
decompensation...Although records indicate
two periods of inpatient mental health
treatment subsequent to the claimant's
alleged disability onset date, each
admission appears to have last only a few
days. Because the claimant's mental
impairments do not cause at least two
"marked" limitations or one "marked"
limitation and "repeated" episodes of
decompensation, each of extended duration,
the "paragraph B" criteria are not
satisfied.

Tr. 14-16.

After careful consideration of the entire
record, the undersigned finds that the
claimant has the residual functional
capacity to perform light work...In making
this finding, the undersigned has
considered all symptoms and the extent to
which these symptoms can reasonably be
accepted as consistent with the objective
medical evidence and other evidence...After
careful consideration of the evidence, the
undersigned finds that the claimant's
medically determinable impairments could
reasonably be expected to cause the alleged
symptoms; however, the claimant's
statements concerning the intensity,
persistence and limiting effects of these
symptoms are not credible to the extent
they are inconsistent with the above
residual functional capacity
assessment...At the hearing, both the

7

> claimant and her representative made reference to notes as to the claimant's inability to work from both Dr. Segreto and Clifford McNaughton, MD, adding that they have excused her from work since 2009...However, such statements were given little weight by the undersigned. These opinions are quite conclusory, providing very little explanation of the evidence relied on in forming the opinion.

Tr. 17-19.

## IV.  STANDARD OF REVIEW

This Court's role in review of the ALJ's decision requires a determination of whether the decision of the ALJ is supported by substantial evidence on the record as a whole. See 42 U.S.C. § 405(g); Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008). Substantial evidence is less than a preponderance but enough that a reasonable mind might find it adequate to support the conclusion in question. Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008) (citing Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007)). This Court must consider both evidence that supports and detracts from the ALJ's decision. Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006) (citing Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)). In applying this standard, this Court will not reverse the ALJ, even if it would have reached a contrary

8

decision, as long as substantial evidence on the record as a whole supports the ALJ's decision.  <u>Eichelberger v. Barnhart</u>, 390 F.3d 584, 589 (8th Cir. 2004).  The ALJ's decision shall be reversed only if it is outside the reasonable "zone of choice."  <u>Hacker v. Barnhart</u>, 459 F.3d 934, 936 (8th Cir. 2006) (citing <u>Culbertson v. Shalala</u>, 30 F.3d 934, 939 (8th Cir. 1994)).

This Court may also ascertain whether the ALJ's decision is based on legal error.  <u>Lauer v. Apfel</u>, 245 F.3d 700, 702 (8th Cir. 2001).  If the ALJ applies an improper legal standard, it is within this Court's discretion to reverse his/her decision.  <u>Neal v. Barnhart</u>, 405 F.3d 685, 688 (8th Cir. 2005); 42 U.S.C. 405(g).

**V.  ISSUES**

In her brief, Ms. Johnson presents one primary issue, that the ALJ erred in determining that she was not under a disability as contemplated by Listings §§ 12.02, 12.04, 12.06, and 12.08.  Ms. Johnson argues she has a mental impairment as contemplated by the Listings.

**VI.  ANALYSIS**

In order for a plaintiff to qualify for disability benefits, they must demonstrate they have a disability as defined in the Social Security Act [hereinafter the Act].  The Act defines a disability as an:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

42 U.S.C. § 423(d)(1)(A).

**A.  Credibility**

Although Ms. Johnson did not make a credibility argument in her brief, during the hearing her attorney argued that the record supports her testimony and the ALJ erred in determining that she did not testify credibility about the effects of her condition.

"In order to assess a claimant's subjective complaints, the ALJ must make a credibility determination by considering the claimant's daily activities; duration, frequency, and intensity of the pain; precipitating and aggravating factors; dosage, effectiveness and side effects of medication; and

functional restrictions." Mouser v. Astrue, 545 F.3d 634, 638 (8th Cir. 2008). The ALJ may not discount subjective complaints solely because they are not supported by objective medical evidence. See O'Donnell v. Barnhart, 318 F.3d 811, 816 (8th Cir. 2003). However, "[a] disability claimant's subjective complaints of pain may be discounted if inconsistencies in the record as a whole bring those complaints into question." Gonzales v. Barnhart, 465 F.3d 890, 895 (8th Cir. 2006).

During the hearing, Ms. Johnson testified that she is unable to work primarily because of the symptoms of her mental health impairments. As discussed in the ALJ's opinion, Ms. Johnson stated that when she last tried to work in 2009, she lasted only 1 day because she felt she was being judged by others and because she would "freeze" and not know what to do when customers came to her counter. Regarding her prior employment, Ms. Johnson testified that it was too much stress and that she could not get along with her coworkers. She also testified about the dramatic impact her medications have on her ability to function.

As discussed above, the ALJ determined that Ms. Johnson's testimony was not credible, even though it was supported by the statements of her significant other, and the opinions of of her treating physicians such as Dr. McNaughton.[1] The Court finds that Ms. Johnson's testimony was supported by substantial evidence in the record as a whole and should have been considered credible by the ALJ.

**B.  Mental Impairment**

Ms. Johnson's central argument is that the ALJ should have found that she has an impairment under the "Paragraph B" criteria.[2]   Ms. Johnson argues that has both marked restrictions on her activities of daily living and repeated episodes of decompensation.  In her brief, Ms. Johnson states that:

---

[1] See Tr. 425 where Dr. McNaughton states that "Elizabeth is unable to maintain employment due to a medical condition."

[2]The Paragraph B criteria requirements are:
B. Resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social
      functioning; or
3. Marked difficulties in maintaining concentration,
      persistence, or pace; or
4. Repeated episodes of decompensation, each of
      extended duration.

12

> The record as a whole shows that plaintiff
> has had extreme difficulty with social
> functioning for years. That is the essence
> of Dr. McNaughton's Mental Status
> Examination on June 5, 2011... "Attention
> and concentration are diminished. Insight
> and judgment are somewhat impaired. This
> patient has a lot of avoidant behaviors
> that I think arise out of her strong social
> anxiety and general anxiety features.
> Although there are no specific OCD rituals
> identified, she is very much a ruminant
> worrier. She very much gets stuck on
> worries of social failure or work failure
> and this immobilizes her. Diagnosis: Axis
> I: Social anxiety disorder, severe, with
> avoidant behaviors, Generalized anxiety
> features, Panic episodes, no specific
> agoraphobic locations, Post traumatic
> stress disorder, Depressive disorder, NOS,
> Rule out bipolar mood disorder features;
> Axis II: Very strong borderline personality
> disorder features; Axis III: Obesity,
> possible hypertension, chronic insomnia;
> Axis IV: Psychosocial Stressors; severe –
> rejection by family of origin, sexual abuse
> by mom's boyfriend, her own finance,
> occupation, and housing issues; Axis V:
> Current GAF is 40 to 45 (Tr. 447). Dr.
> McNaughton is the hands on specialist
> treating plaintiff in the months
> immediately preceding her hearing.

Docket #9, p. 7-8.

Ms. Johnson also argues that the ALJ should have found

that she has met the criteria for repeated episodes of

Decompensation.[3]   Ms. Johnson argues that she had three
episodes of hospitalizations in 2009, as well as repeatedly
low GAF scores, that the ALJ should have considered as
repeated episodes of decompensation.   The Plaintiff argues
that the ALJ too narrowly interpreted the definition of
repeated episodes of decompensation.

---

[3]   See paragraph C.4. of Section 12.00 - Mental
Disorder of the Listing of Impairments which states: 4.
Episodes of decompensation are exacerbations or temporary
increases in symptoms or signs accompanied by a loss of
adaptive functioning, as manifested by difficulties in
performing activities of daily living, maintaining social
relationships, or maintaining concentration, persistence, or
pace.   Episodes of decompensation may be demonstrated by an
exacerbation in symptoms or signs that would ordinarily
require increased treatment or a less stressful situation
(or a combination of the two).   Episodes of decompensation
may be inferred from medical records showing significant
alteration in medication; or documentation of the need for a
more structured psychological support system (e.g.,
hospitalizations, placement in a halfway house, or a highly
structured and directing household); or other relevant
information in the record about the existence, severity, and
duration of the episode.   The term repeated episodes of
decompensation, each of extended duration in these listings
means three episodes within 1 year, or an average of once
every 4 months, each lasting for at least 2 weeks.   If you
have experienced more frequent episodes of shorter duration
or less frequent episodes of longer duration, we must use
judgment to determine if the duration and functional effects
of the episodes are of equal severity and may be used to
substitute for the listed finding in a determination of
equivalence.

The Defendant argues that the ALJ correctly applied the relevant factors in determining that Ms. Johnson is not suffering an impairment under the Listings. Specifically, the Defendant states that:

> Contrary to plaintiff's argument, the ALJ appropriately analyzed the evidence of plaintiff's mental impairments, including appropriately considering plaintiff's GAF scores, and appropriately performed the technique for analyzing mental impairments (Tr. 14-23). Plaintiff is indeed taking medications, but the ALJ was required to do more than look at a list of medications before finding plaintiff to be disabled. The ALJ properly evaluated the record as a whole, including what the medical and other evidence showed about plaintiff's medications, functioning, and ability to concentrate (Tr. 14-23). Substantial evidence fully supports the ALJ's findings, which thus should be affirmed.

Docket #10, p. 7-8.

The Defendant goes onto argue that simply because the Plaintiff suffers a mental impairment does not mean she is disabled under the Code. See Buckner v. Astrue, 646 F.3d 549, 557 (8th Cir. 2011), stating that "[A]lthough Buckner was diagnosed with depression and anxiety, substantial evidence on the record supports the ALJ's finding that his depression and anxiety was not severe."

It is undisputed in this case that Ms. Johnson has severe mental impairments, and that she has regularly treated for them. She is on numerous medications and has been repeatedly hospitalized. The fighting issue is whether those impairments qualify her for disability under the guidelines outlined in the parties' arguments, discussed above. After reviewing the record as whole, the Court is persuaded that the ALJ's determination regarding the Paragraph B criteria is not supported by substantial evidence, considering both the medical evidence and Ms. Johnson's testimony.

It is equally clear that substantial evidence does support a finding that Ms. Johnson has both marked restrictions on her activities of daily living and repeated episodes of decompensation. Dr. McNaughton's medical reports demonstrate that Ms. Johnson has severe restrictions on daily living. She has been repeatedly hospitalized, at times with suicidal ideation. The medical records are also supported by Ms. Johnson's testimony.

The ALJ found that Ms. Johnson did not have repeated episodes of decompensation because she did not have "repeated episodes of decompensation, each of extended duration, means

16

three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." However, as noted by the Plaintiff, Paragraph C.4. of Section 12.00 states that, "if you have experienced more frequent episodes of shorter duration or less frequent episodes of longer duration, we must use judgment to determine if the duration and functional effects of the episodes are of equal severity and may be used to substitute for the listed finding in a determination of equivalence." The ALJ erred by relying only on the strict guidelines set out earlier in that section, and not the judgment portion quoted above. Ms. Johnson has had numerous instances of decompensation. As stated in Ms. Johnson's brief, she had three hospitalization in 2009, with GAF scores between 15 and 30.[4] Nearly all the medical records indicate that Ms. Johnson has some difficulty maintaining concentration, persistence and pace.[5] As noted in Dr.

---

[4]See for example Dr. Segreto's evaluation dated June 24, 2010, noting that Ms. Johnson only had a GAF score of 28 upon admission and GAF score of 40 upon discharge. Tr. 403.

[5]See for example, Dr. McNaughton's notes from 05/15/2011, stating that "Attention and concentration are adequate for the interview but somewhat distractable and insight and judgment are still somewhat impaired...the diagnosis remains the same." Tr. 371. See also Dr.

17

McNaughton's notes on July 21, 2011, Ms. Johnson's concentration is so poor that she has trouble completing household chores. Tr. 444. It is clear to the Court that those incidents meet the definition outlined in paragraph C.4. Accordingly, Ms. Johnson has satisfied the Paragraph B criteria.

## VII. CONCLUSION

The Court has the authority to reverse a decision of the Commissioner, "with or without remanding the cause for rehearing," but the Eighth Circuit has held that a remand for award of benefits is appropriate only where "the record 'overwhelmingly supports'" a finding of disability. 42 U.S.C. 405(g); Buckner v. Apfel, 213 F.3d 1006, 1011 (8th Cir. 2000). In this case, the Court finds that a remand for an award of benefits is appropriate. Ms. Johnson's testimony along with medical records reveal repeated instances of decompensation. Accordingly, Ms. Johnson has satisfied the criteria discussed above and the record overwhelmingly supports a finding of disability.

---

Delperdang's evaluation on 10/05/2010 noting that Ms. Johnson suffers from acute, chronic and uncontrolled anxiety. Tr. 394.

18

Application for attorney fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 (EAJA), must be filed within thirty (30) days of the entry of final judgment in this action.  Thus, unless this decision is appealed, if Johnson's attorney wishes to apply for EAJA fees, it must be done within thirty (30) days of the entry of the final judgment in this case.

**IT IS SO ORDERED** this 7th day of February, 2013.

_Donald E. O'Brien_
Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa